FILED
CLERK, U.S. DISTRICT COURT

10/29/2021

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ DTA _____ DEPUTY

TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
BRADLEY E. MARRETT (Cal. Bar No. 288079)
Assistant United States Attorney
Santa Ana Branch Office
    8000 United States Courthouse
    411 West Fourth Street
    Santa Ana, California 92701
    Telephone: (714) 338-3505
    Facsimile: (714) 338-3561
    E-mail:   bradley.marrett@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 8:21-cr-00198-DSF |
| Plaintiff, | PLEA AGREEMENT FOR DEFENDANT LOUIS ZIMMERLE |
| v. | |
| LOUIS ZIMMERLE, | |
| Defendant. | |

    1.   This constitutes the plea agreement between LOUIS ZIMMERLE ("defendant") and the United States Attorney's Office for the Central District of California ("the USAO") in the above-captioned case. This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

DEFENDANT'S OBLIGATIONS

    2.   Defendant agrees to:

        a.   Give up the right to indictment by a grand jury and, at the earliest opportunity requested by the USAO and provided by the

Court, appear and plead guilty to a single-count information in the form attached to this agreement as Exhibit A or a substantially similar form, which charges defendant with Wire Fraud in violation of 18 U.S.C. § 1343.

        b.   Not contest facts agreed to in this agreement.

        c.   Abide by all agreements regarding sentencing contained in this agreement.

        d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

        e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

        f.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

        g.   Pay the applicable special assessments at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

        h.   Defendant agrees that any and all criminal debt ordered by the Court will be due in full and immediately.  The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

        i.   Complete the Financial Disclosure Statement on a form provided by the USAO and, within 30 days of defendant's entry of a guilty plea, deliver the signed and dated statement, along with all

1  of the documents requested therein, to the USAO by either email at
2  usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial
3  Litigation Section at 300 North Los Angeles Street, Suite 7516, Los
4  Angeles, CA 90012.  Defendant agrees that defendant's ability to pay
5  criminal debt shall be assessed based on the completed Financial
6  Disclosure Statement and all required supporting documents, as well
7  as other relevant information relating to ability to pay.

8       j.   Authorize the USAO to obtain a credit report upon
9  returning a signed copy of this plea agreement.

10      k.   Consent to the USAO inspecting and copying all of
11 defendant's financial documents and financial information held by the
12 United States Probation and Pretrial Services Office.

13      3.   Defendant further agrees:

14      a.   To forfeit all right, title, and interest in and to
15 any and all monies, properties, and/or assets of any kind, derived
16 from or acquired as a result of, or used to facilitate the commission
17 of, or involved in the illegal activity to which defendant is
18 pleading guilty, specifically including, but not limited to, the
19 following (collectively, the Forfeitable Assets"):

20      i.   Approximately $5,731.67 in bank funds seized on
21 or about August 4, 2021, from a Chase Bank account ending in 7695, in
22 the name of BNZ One Capital LLC.

23      ii.  Approximately $309,069.96 in bank funds seized on
24 or about August 4, 2021, from a Chase Bank account ending in 2566, in
25 the name of BNZ One Capital LLC.

26      iii. Approximately $304.84 in bank funds seized on or
27 about August 4, 2021, from a Chase Bank account ending in 6318, in
28 the name of BNZ One Capital LLC.

iv.   Approximately $250.00 in bank funds seized on or about August 4, 2021, from a Chase Bank account ending in 6359, in the name of BNZ One Capital LLC.

v.   The property commonly known as 506 3rd Street, Galt, California 95632-1817, with APN 150-0244-003-0000, titled in the names of C&G LLC and BNZ One Capital LLC.

vi.   The property commonly known as 2709 Starbird Drive, Costa Mesa, California 92626-4800, with APN 420-021-04, titled in the names of Brett Barber, Melony Barber, and The Barber Family Trust.

vii. The property commonly known as Lot 17, Midway Avenue, Galt, California 95632, with APN 148-0064-004-0000, titled in the names of Ernest Leroy Long and BNZ One Capital LLC.

viii.   The property commonly known as Lot 2, Palmdale Boulevard Vic 42nd South, Palmdale, California 93552, with APN 3023-003-038, titled in the names if C&G LLC and BNZ One Capital LLC.

ix.   The property commonly known as Lot 15, Spring Street, Galt, California 95632, with APN 148-0064-002-0000, titled in the name of BNZ One Capital LLC.

x.   The property commonly known as Lot 16, Spring Street, Galt, California 95632, with APN 148-0064-003-0000, titled in the name of BNZ One Capital LLC.

b.   To the Court's entry of an order of forfeiture at or before sentencing with respect to the Forfeitable Assets and to the forfeiture of the assets.

c.   To take whatever steps are necessary to pass to the United States clear title to the Forfeitable Assets, including,

without limitation, the execution of a consent decree of forfeiture
and the completing of any other legal documents required for the
transfer of title to the United States.

d.   Not to contest any administrative forfeiture
proceedings or civil judicial proceedings commenced against the
Forfeitable Assets.  If defendant submitted a claim and/or petition
for remission for all or part of the Forfeitable Assets on behalf of
himself or any other individual or entity, defendant shall and hereby
does withdraw any such claims or petitions, and further agrees to
waive any right he may have to seek remission or mitigation of the
forfeiture of the Forfeitable Assets.

e.   Not to assist any other individual in any effort
falsely to contest the forfeiture of the Forfeitable Assets.

f.   Not to claim that reasonable cause to seize the
Forfeitable Assets was lacking.

g.   To prevent the transfer, sale, destruction, or loss of
any and all assets described above to the extent defendant has the
ability to do so.

h.   To fill out and deliver to the USAO a completed
financial statement listing defendant's assets on a form provided by
the USAO.

i.   That forfeiture of the Forfeitable Assets shall not be
counted toward satisfaction of any special assessment, fine,
restitution, costs, or other penalty the Court may impose.

4.   With respect to any criminal forfeiture ordered as a result
of this plea agreement, defendant waives: (1) the requirements of
Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice
of the forfeiture in the charging instrument, announcements of the

forfeiture at sentencing, and incorporation of the forfeiture in the judgment; (2) all constitutional and statutory challenges to the forfeiture (including by direct appeal, habeas corpus, or any other means); and (3) all constitutional, legal, and equitable defenses to the forfeiture of the Forfeitable Assets in any proceeding on any grounds including, without limitation that the forfeiture constitutes an excessive fine or punishment.  Defendant acknowledges that forfeiture of the Forfeitable Assets is part of the sentence that may be imposed in this case and waives any failure by the Court to advise defendant of this, pursuant to Federal Rule of Criminal Procedure 11(b)(1)(J), at the time the Court accepts defendant's guilty plea.

5.    Defendant further agrees to cooperate fully with the USAO, the Federal Bureau of Investigation, and, as directed by the USAO, any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authority.  This cooperation requires defendant to:

a.    Respond truthfully and completely to all questions that may be put to defendant, whether in interviews, before a grand jury, or at any trial or other court proceeding.

b.    Attend all meetings, grand jury sessions, trials or other proceedings at which defendant's presence is requested by the USAO or compelled by subpoena or court order.

c.    Produce voluntarily all documents, records, or other tangible evidence relating to matters about which the USAO, or its designee, inquires.

6.    For purposes of this agreement: (1) "Cooperation Information" shall mean any statements made, or documents, records, tangible evidence, or other information provided, by defendant

1    pursuant to defendant's cooperation under this agreement or pursuant

2    to the letter agreement previously entered into by the parties dated

3    August 5, 2021 (the "Letter Agreement"); and (2) "Plea Information"

4    shall mean any statements made by defendant, under oath, at the

5    guilty plea hearing and the agreed to factual basis statement in this

6    agreement.

7                          THE USAO'S OBLIGATIONS

8         7.   The USAO agrees to:

9              a.   Not contest facts agreed to in this agreement.

10             b.   Abide by all agreements regarding sentencing contained

11   in this agreement.

12             c.   At the time of sentencing, provided that defendant

13   demonstrates an acceptance of responsibility for the offenses up to

14   and including the time of sentencing, recommend a two-level reduction

15   in the applicable Sentencing Guidelines offense level, pursuant to

16   U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an

17   additional one-level reduction if available under that section.

18             d.   Except for criminal tax violations (including

19   conspiracy to commit such violations chargeable under 18 U.S.C.

20   § 371), not further criminally prosecute defendant for violations of

21   18 U.S.C. § 1343 arising out of false statements and representations

22   made to victim Zhaohui "Zoey" Yu relating to the solicitation of

23   $500,000 purportedly for real estate investments outside of BNZ

24   Capital One, LLC, but which, in fact, were used, in part, by

25   defendant ZIMMERLE to renovate his personal residence.  Defendant

26   understands that the USAO is free to criminally prosecute defendant

27   for any other unlawful past conduct or any unlawful conduct that

28   occurs after the date of this agreement.  Defendant agrees that at

                                     7

the time of sentencing the Court may consider the uncharged conduct in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed after consideration of the Sentencing Guidelines and all other relevant factors under 18 U.S.C. § 3553(a). Defendant further agrees that at the time of sentencing the Court may award restitution to victim Zhaohui "Zoey" Yu in the amount of $300,000.

e.   Recommend that defendant be sentenced to a term of imprisonment no higher than the low end of the applicable Sentencing Guidelines range, provided that the offense level used by the Court to determine that range is 20 or higher and provided that the Court does not depart downward in offense level or criminal history category.  For purposes of this agreement, the low end of the Sentencing Guidelines range is that defined by the Sentencing Table in U.S.S.G. Chapter 5, Part A, without regard to reductions in the term of imprisonment that may be permissible through the substitution of community confinement or home detention as a result of the offense level falling within Zone B or Zone C of the Sentencing Table.

8.   The USAO further agrees:

a.   Not to offer as evidence in its case-in-chief in the above-captioned case or any other criminal prosecution that may be brought against defendant by the USAO, or in connection with any sentencing proceeding in any criminal case that may be brought against defendant by the USAO, any Cooperation Information. Defendant agrees, however, that the USAO may use both Cooperation Information and Plea Information: (1) to obtain and pursue leads to other evidence, which evidence may be used for any purpose, including

1  any criminal prosecution of defendant; (2) to cross-examine defendant

2  should defendant testify, or to rebut any evidence offered, or

3  argument or representation made, by defendant, defendant's counsel,

4  or a witness called by defendant in any trial, sentencing hearing, or

5  other court proceeding; and (3) in any criminal prosecution of

6  defendant for false statement, obstruction of justice, or perjury.

7  b.   Not to use Cooperation Information against defendant

8  at sentencing for the purpose of determining the applicable guideline

9  range, including the appropriateness of an upward departure, or the

10 sentence to be imposed, and to recommend to the Court that

11 Cooperation Information not be used in determining the applicable

12 guideline range or the sentence to be imposed.  Defendant

13 understands, however, that Cooperation Information will be disclosed

14 to the United States Probation and Pretrial Services Office and the

15 Court, and that the Court may use Cooperation Information for the

16 purposes set forth in U.S.S.G § 1B1.8(b) and for determining the

17 sentence to be imposed.

18 c.   In connection with defendant's sentencing, to bring to

19 the Court's attention the nature and extent of defendant's

20 cooperation.

21 d.   If the USAO determines, in its exclusive judgment,

22 that defendant has both complied with defendant's obligations under

23 paragraphs 2, 3, 4, and 5 above and provided substantial assistance

24 to law enforcement in the prosecution or investigation of another

25 ("substantial assistance"), to move the Court pursuant to U.S.S.G.

26 § 5K1.1 to fix an offense level and corresponding guideline range

27 below that otherwise dictated by the sentencing guidelines, and to

28 recommend a term of imprisonment within this reduced range.

DEFENDANT'S UNDERSTANDINGS REGARDING COOPERATION

9. Defendant understands the following:

a. Any knowingly false or misleading statement by defendant will subject defendant to prosecution for false statement, obstruction of justice, and perjury and will constitute a breach by defendant of this agreement.

b. Nothing in this agreement requires the USAO or any other prosecuting, enforcement, administrative, or regulatory authority to accept any cooperation or assistance that defendant may offer, or to use it in any particular way.

c. Defendant cannot withdraw defendant's guilty plea if the USAO does not make a motion pursuant to U.S.S.G. § 5K1.1 for a reduced guideline range or if the USAO makes such a motion and the Court does not grant it or if the Court grants such a USAO motion but elects to sentence above the reduced range.

d. At this time the USAO makes no agreement or representation as to whether any cooperation that defendant has provided or intends to provide constitutes or will constitute substantial assistance.  The decision whether defendant has provided substantial assistance will rest solely within the exclusive judgment of the USAO.

e. The USAO's determination whether defendant has provided substantial assistance will not depend in any way on whether the government prevails at any trial or court hearing in which defendant testifies or in which the government otherwise presents information resulting from defendant's cooperation.

## NATURE OF THE OFFENSE

10.  Defendant understands that for defendant to be guilty of the crime charged in the single-count information, that is, Wire Fraud, in violation of Title 18, United States Code, Section 1343, the following must be true: (1) defendant knowingly participated in a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises; (2) the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property; (3) defendant acted with the intent to defraud; that is, the intent to deceive and cheat; and (4) defendant used, or caused to be used, an interstate or foreign wire communication to carry out or attempt to carry out an essential part of the scheme.

## PENALTIES AND RESTITUTION

11.  Defendant understands that the statutory maximum sentence that the Court can impose for each violation of Title 18, United States Code, Section 1343, is: 20 years' imprisonment; a 3-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

12.  Defendant understands that defendant will be required to pay full restitution to the victim(s) of the offenses to which defendant is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victim(s) of the offenses to which defendant is pleading guilty and in amounts greater than those alleged in the count to which defendant is

pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offense to which defendant is pleading guilty; and (b) any charge not prosecuted pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with that charge.  The parties currently believe that the applicable amount of restitution is at least approximately $882,815.11, including $300,000 owed to victim Zhaohui "Zoey" Yu, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

13.  Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

14.  Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the convictions in this case

12

may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

15.   Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the convictions in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.  Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his convictions on his immigration status.  Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is automatic removal from the United States.

<u>FACTUAL BASIS</u>

16.   Defendant admits that defendant is, in fact, guilty of the offenses to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the

Sentencing Guidelines factors set forth in paragraph 18 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

Beginning no later than February 2020 and continuing to at least March 2021, in Newport Beach, California, within the Central District of California, defendant LOUIS ZIMMERLE participated in and aided and abetted Co-Schemer 1 in a scheme to defraud victims of their money or property.  The scheme was carried out through a company known as BNZ CAPITAL ONE, LLC ("BNZ CAPITAL").  In the course of the scheme, BNZ CAPITAL raised approximately $13.8 million from investors.  For his part, defendant ZIMMERLE directly or indirectly raised at least $1,608,368.76 from investors Z.Y., L.L., L.S., P.P., M.M., and N.G., among others.  Defendant ZIMMERLE admits that as a result he caused a loss of at least $550,000.

In general, the scheme operated as follows.  ZIMMERLE and Co-Schemer 1 represented to potential investors that BNZ CAPITAL was in the business of buying real estate and would generate returns to investors by flipping properties (i.e., purchasing real estate at below market value, improving the real estate, and selling it for a profit) or developing properties (i.e., purchasing unimproved real estate, developing it, and selling developed parcels for a profit).  Each potential investor was provided a "Lender/Investor's Statement Agreement," which represented, among other things, that BNZ CAPITAL would pay interest to investors, ranging from 8% for some investors to 10% for others.

While BNZ CAPITAL did use some investor money for purchasing real estate, BNZ CAPITAL never generated revenues or profits

sufficient to make payments promised to investors.  By no later than February 2020, ZIMMERLE knew that BNZ CAPITAL was defrauding investors; that is, BNZ CAPITAL was repaying earlier investors with money solicited from new investors, and not from business revenues or profits.  Yet, ZIMMERLE and Co-Schemer 1 continued to solicit new investors to invest in BNZ CAPITAL.  At no time did ZIMMERLE or Co-Schemer 1 tell new investors that their investments would be used to repay older investors.  ZIMMERLE and Co-Schemer 1 also did not disclose to victims that their money would be used for other purposes, such as paying commissions and other monies to ZIMMERLE and Co-Schemer 1 and purchasing a personal residence for ZIMMERLE and a personal residence for Co-Schemer 1.  The false and misleading statements to victims about how their money would be used were material; none of the victims would have parted with their money or property had they known that they were going to be repaid with new investor money, rather than business-generated revenues; that Co-Schemer 1 and ZIMMERLE would be using a substantial portion of investor money to pay themselves; or that Co-Schemer 1 and ZIMMERLE would be using investor money to purchase personal residences.

In carrying out this scheme, defendant ZIMMERLE admits that he acted with the intent to defraud; that is, the intent to deceive and cheat the victim investors.  Defendant ZIMMERLE further admits that in executing the scheme he used or caused to be used interstate wires to carry out the transfer of the following funds on or about April 23, 2020: $89,500 from victim P.P.  Defendant ZIMMERLE further admits that he received and kept approximately $582,815.11 of investor money for his personal gain, comprising, among other things, salary and undisclosed commissions received from BNZ CAPITAL.

SENTENCING FACTORS

17.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crimes of conviction.

18.  Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 7 | U.S.S.G. § 2B1.1(a)(2) |
| Minor Role | -2 | U.S.S.G. § 3B1.2 |

Defendant and the USAO agree that the loss amount for purposes of the Sentencing Guidelines is no less than $550,000.  The USAO reserves the right to argue that the loss amount for purposes of the Sentencing Guidelines is between $550,000 and $1,608,368.76. Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate, including the specific offense characteristic in U.S.S.G. § 2B1.1(b)(2)(A)(i).

19.  Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

20.   Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

21.   Defendant understands that by pleading guilty, defendant gives up the following rights:

a.   The right to persist in a plea of not guilty.

b.   The right to a speedy and public trial by jury.

c.   The right to be represented by counsel – and if necessary have the Court appoint counsel - at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel – and if necessary have the Court appoint counsel – at every other stage of the proceeding.

d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.   The right to confront and cross-examine witnesses against defendant.

f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.   Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

1

WAIVER OF VENUE

2       22.  Having been fully advised by defendant's attorney regarding

3 the requirements of venue with respect to the offenses to which

4 defendant is pleading guilty, to the extent the offenses to which

5 defendant is pleading guilty were committed, begun, or completed

6 outside the Central District of California, defendant knowingly,

7 voluntarily, and intelligently waives, relinquishes, and gives up:

8 (a) any right that defendant might have to be prosecuted only in the

9 district where the offenses to which defendant is pleading guilty

10 were committed, begun, or completed; and (b) any defense, claim, or

11 argument defendant could raise or assert based upon lack of venue

12 with respect to the offenses to which defendant is pleading guilty.

13

WAIVER OF APPEAL OF CONVICTION

14       23.  Defendant understands that, with the exception of an appeal

15 based on a claim that defendant's guilty plea was involuntary, by

16 pleading guilty defendant is waiving and giving up any right to

17 appeal defendant's convictions on the offenses to which defendant is

18 pleading guilty.  Defendant understands that this waiver includes,

19 but is not limited to, arguments that the statute to which defendant

20 is pleading guilty is unconstitutional, and any and all claims that

21 the statement of facts provided herein is insufficient to support

22 defendant's plea of guilty.

23

LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

24       24.  Defendant agrees that, provided the Court imposes a term of

25 imprisonment within or below the range corresponding to an offense

26 level of 20 and the criminal history category calculated by the

27 Court, defendant gives up the right to appeal all of the following:

28 (a) the procedures and calculations used to determine and impose any

portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the amount and terms of any restitution order, provided it requires payment of no more than $882,815.11; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

25.  The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment within or above the range corresponding to an offense level of 20 and the criminal history category calculated by the Court, the USAO gives up its right to appeal any portion of the sentence, with the exception that the USAO reserves the right to appeal the following: the amount of restitution ordered if that amount is less than $882,815.11.

<u>RESULT OF WITHDRAWAL OF GUILTY PLEA</u>

26.  Defendant agrees that if, after entering guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement, including in particular its

obligations regarding the use of Cooperation Information; (b) in any investigation, criminal prosecution, or civil, administrative, or regulatory action, defendant agrees that any Cooperation Information and any evidence derived from any Cooperation Information shall be admissible against defendant, and defendant will not assert, and hereby waives and gives up, any claim under the United States Constitution, any statute, or any federal rule, that any Cooperation Information or any evidence derived from any Cooperation Information should be suppressed or is inadmissible; and (c) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

## EFFECTIVE DATE OF AGREEMENT

27.  This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

## BREACH OF AGREEMENT

28.  Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO

may declare this agreement breached.  For example, if defendant knowingly, in an interview, before a grand jury, or at trial, falsely accuses another person of criminal conduct or falsely minimizes defendant's own role, or the role of another, in criminal conduct, defendant will have breached this agreement.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing.  If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then:

a.   If defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea.

b.   The USAO will be relieved of all its obligations under this agreement; in particular, the USAO: (i) will no longer be bound by any agreements concerning sentencing and will be free to seek any sentence up to the statutory maximum for the crimes to which defendant has pleaded guilty; (ii) will no longer be bound by any agreements regarding criminal prosecution, and will be free to criminally prosecute defendant for any crime, including charges that the USAO would otherwise have been obligated not to criminally prosecute pursuant to this agreement; and (iii) will no longer be bound by any agreement regarding the use of Cooperation Information and will be free to use any Cooperation Information in any way in any investigation, criminal prosecution, or civil, administrative, or regulatory action.

c.    The USAO will be free to criminally prosecute defendant for false statement, obstruction of justice, and perjury based on any knowingly false or misleading statement by defendant.

d.    In any investigation, criminal prosecution, or civil, administrative, or regulatory action: (i) defendant will not assert, and hereby waives and gives up, any claim that any Cooperation Information was obtained in violation of the Fifth Amendment privilege against compelled self-incrimination; and (ii) defendant agrees that any Cooperation Information and any Plea Information, as well as any evidence derived from any Cooperation Information or any Plea Information, shall be admissible against defendant, and defendant will not assert, and hereby waives and gives up, any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that any Cooperation Information, any Plea Information, or any evidence derived from any Cooperation Information or any Plea Information should be suppressed or is inadmissible.

29.    Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a.    Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.    Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the

1  extent that such defenses existed as of the date of defendant's

2  signing this agreement.

3              COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES

4                              OFFICE NOT PARTIES

5       30.  Defendant understands that the Court and the United States

6  Probation and Pretrial Services Office are not parties to this

7  agreement and need not accept any of the USAO's sentencing

8  recommendations or the parties' agreements to facts or sentencing

9  factors.

10      31.  Defendant understands that both defendant and the USAO are

11 free to: (a) supplement the facts by supplying relevant information

12 to the United States Probation and Pretrial Services Office and the

13 Court, (b) correct any and all factual misstatements relating to the

14 Court's Sentencing Guidelines calculations and determination of

15 sentence, and (c) argue on appeal and collateral review that the

16 Court's Sentencing Guidelines calculations and the sentence it

17 chooses to impose are not error, although each party agrees to

18 maintain its view that the calculations in paragraph 18 are

19 consistent with the facts of this case.  While this paragraph permits

20 both the USAO and defendant to submit full and complete factual

21 information to the United States Probation and Pretrial Services

22 Office and the Court, even if that factual information may be viewed

23 as inconsistent with the facts agreed to in this agreement, this

24 paragraph does not affect defendant's and the USAO's obligations not

25 to contest the facts agreed to in this agreement.

26      32.  Defendant understands that even if the Court ignores any

27 sentencing recommendation, finds facts or reaches conclusions

28 different from those agreed to, and/or imposes any sentence up to the

maximum established by statute, defendant cannot, for that reason,

withdraw defendant's guilty plea, and defendant will remain bound to

fulfill all defendant's obligations under this agreement.  Defendant

understands that no one -- not the prosecutor, defendant's attorney,

or the Court -- can make a binding prediction or promise regarding

the sentence defendant will receive, except that it will be within

the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

33.  Defendant understands that, except as set forth herein,

there are no promises, understandings, or agreements between the USAO

and defendant or defendant's attorney, and that no additional

promise, understanding, or agreement may be entered into unless in a

writing signed by all parties or on the record in court.

///

///

///

///

///

<u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

34.  The parties agree that this agreement will be considered

part of the record of defendant's guilty plea hearing as if the

entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

TRACY L. WILKISON
Acting United States Attorney

BRADLEY E. MARRETT
Assistant United States Attorney

10/28/21
Date

LOUIS ZIMMERLE
Defendant

26 October 2021
Date

ANDREW COWAN
Attorney for Defendant
LOUIS ZIMMERLE

10/27/21
Date

CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

LOUIS ZIMMERLE
Defendant

26 October 2021
Date

26

### CERTIFICATION OF DEFENDANT'S ATTORNEY

I am LOUIS ZIMMERLE's attorney. I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

ANDREW COWAN
Attorney for Defendant
LOUIS ZIMMERLE

10/27/21
Date